David J. Wolkenstein (DW 0398)
Joseph N. Paykin (JP 3410)
RAICE PAYKIN GREENBLATT LESSER & KRIEG LLP
   *Attorneys for Plaintiff, David Berney, individually, and as a*
   *Shareholder of Veritas Financial Corporation*
185 Madison Avenue, 10th Floor
New York, New York 10016
(212) 725-4423

UNITED STATES BANKRUPTCY COURT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No.:  05-10774(ALG) |
| VERITAS FINANCIAL CORP., | : | |
| | : | |
| Debtor. | : | |

------------------------------------------------------------X

| | | |
|---|---|---|
| DAVID BERNEY, individually, and derivatively, | : | |
| as a shareholder of VERITAS FINANCIAL | : | |
| CORPORATION, | : | Adv. Pro. No. |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | |
| | : | |
| VERITAS FINANCIAL CORPORATION, | : | **COMPLAINT** |
| ZINDEL ZELMANOVITCH, | : | |
| EAST COAST VENTURE CAPITAL, INC., | : | |
| BROWN RUDNICK BERLACK ISRAELS, LLP, | : | |
| Individually and as Successor to BERLACK | : | |
| ISRAELS & LIBERMAN, LLP and | : | |
| STUART NEUHAUSER, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------X

        Plaintiff, David Berney, individually, and as a shareholder of Veritas Financial

Corporation, by and through his attorneys, Raice Paykin Greenblatt Lesser& Krieg LLP, as and

for his complaint against the defendants, alleges as follows:

## NATURE OF THE CASE

1.     This is an action to recover damages from the defendants for fraud, breach of fiduciary

duty, and conversion. The attorney defendants (Stuart Neuhauser and Brown Rudnick

Berlack Israels LLP), for Neuhauser's personal gain, fraudulently induced Veritas to

participate in an illegal transaction, through which Veritas' assets (i.e., its holdings in

East Coast) were diminished. This action also asserts a claim against East Coast for

aiding and abetting Neuhauser's fraud, by its absolute malfeasance and nonfeasance in

allowing Neuhauser to represent East Coast where Neuhauser had an undisclosed

personal interest in the outcome of the proposed transaction. Plaintiff also brings a claim

against East Coast for its conversion of East Coast stock which had been owned by

Veritas.  Finally, plaintiff brings claims against Veritas and Zelmanovitch for breach of

fiduciary duty, and violation of New York BCL § 720, for the failure to pursue all claims

against East Coast, and the misappropriation of Veritas' shares. Veritas has suffered

substantial damages as a result of the defendants' actions.

2.     On February 10, 2005, the debtor/defendant, Veritas Financial Corporation, filed a

voluntary petition for relief under chapter 11 of Title 11 of the United States Code.


## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this adversary proceeding, by virtue

of 28 U.S.C. §§ 157(a) and (b), and 28 U.S.C. §1334, and the "Standing Order of

Referral of Cases to Bankruptcy Judges" of the United States District Court for the

Couthern District of New York (Ward, Acting C.J.), dated July 10, 1984.

4.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1409(a) because this proceeding arises in a case under the Bankruptcy Code Pending in this district.


## THE PARTIES

6.      Plaintiff, David Berney ("Berney"), a natural person, was at all relevant times a resident of the State of New Jersey, residing at 130 Fifth Street, Lakewood, New Jersey 08701. At the time of the commencement of this action and at the time of the transactions of which the plaintiff hereafter complains, Berney was and still is a shareholder of Veritas Financial Corporation, and sues on behalf of himself and all other shareholders of the defendant corporation.

7.      Defendant Veritas Financial Corporation ("Veritas") is a Delaware business corporation with its principal place of business located at 241 Fifth Avenue, Suite 302, New York, New York, and is the principal shareholder of East Coast.

8.      Defendant Zindel Zelmanovitch ("Zelmanovitch") is a natural person, residing at 1934 E. 18th Street, Brooklyn, New York 11229, and was at all relevant times the President of both East Coast and Veritas, and the largest shareholder of both companies.

9.      Defendant East Coast Venture Capital, Inc. ("East Coast") is a Delaware business corporation with a principal place of business located at 241 Fifth Avenue, Suite 302, New York, New York 10016. East Coast is a specialized small business investment company dealing in equity and debt financing to small and medium sized companies.

10.     Defendant Brown Rudnick Berlack Israels ("Brown Rudnick") is a limited liability partnership, and successor to Berlack Israels & Lieberman, LLP ("Berlack Israels"),

3

engaged in the practice of law with a principal place of business located at 120 West 45th Street, New York, New York.

11.    Berlack Israels is or was a limited liability partnership, which prior to its merger with the law firm now known as Brown Rudnick in February, 2002, was engaged in the practice of law in the State, County and City of New York.

12.    Defendant Stuart Neuhauser ("Neuhauser") was a member of Berlack Israels and was a member of Brown Rudnick. Currently, he is a member of Ellenoff Grossman & Schole LLP, and maintains a place of business located at 370 Lexington Avenue, 19th Floor, New York, New York 10017. During all times relevant hereto, Neuhauser held himself out as an expert in the areas of corporate finance and private and public offerings for United States and foreign companies.


**BASIS FOR COMMENCING A DERIVATIVE ACTION**

13.    On or about October 15, 2003, East Coast and Veritas commenced an action against Brown Rudnick, Berlack Israels and Neuhauser, alleging various causes of action sounding in negligence (legal malpractice) and conflict of interest, styled *East Coast Venture Capital, Inc. and Veritas Financial Corporation, v. Brown Rudnick Berlack Israels, LLP*, et al, in the Supreme Court of the State of New York, County of New York, Index No. 603234/03 (the "Malpractice Action"). On or about December 20, 2004, East Coast and Veritas served and filed an amended complaint (the "Malpractice Complaint") in the Malpractice Action, adding a cause of action for faithless servant. A copy of the Malpractice Complaint is incorporated herein by reference, and made a part hereto.

4

14.   As set forth in the Malpractice Complaint and below, the actions of Berlack Israels and
Neuhauser far exceed mere negligence. Neuhauser, for his own personal benefit,
deliberately and falsely represented certain facts to East Coast and Veritas which they
relied upon to their detriment.  In addition, while Zelmanovitch and East Coast do not
appear to have been intentionally complicit in Neuhauser's fraud, their malfeasance
and/or nonfeasance permitted the fraud to take place.

15.   On or about January 11, 2005, plaintiff requested that Veritas commence an action
against East Coast, Berlack Israels and Neuhauser on the causes of action hereinafter
alleged, or, to the extent possible, that the Malpractice Complaint be further amended to
include new claims.  Plaintiff advised Veritas that if it failed to take action, plaintiff
would commence a derivative action on behalf of Veritas.

16.   Plaintiff did not make a demand upon Veritas that it sue Zelmanovitch personally, as
such demand would be futile, given the facts alleged in this complaint, and therefore,
such demand is excused.

17.   On January 13, 2005, Veritas rejected plaintiff's demand. Accordingly, plaintiff now
brings this action, derivatively, on behalf of Veritas, as well as several causes of action
against Veritas and Zelmanovitch.

**BACKROUND**

18.   East Coast was formed in June 1983 for the purpose of operating as a specialized Small
Business Investment Company ("SBIC"), licensed as such, and under the auspices of the
Small Business Investment Act of 1958. It is regulated and financed in part by the SBA.

19.  Veritas was formed for the sole purpose of being a holding company and primary shareholder of East Coast. Prior to the Appel Transaction described later in this complaint, which was consummated on or about July 28, 1999, Veritas owned 93.5% of the outstanding shares of East Coast. Subsequent to the Appel Transaction, Veritas still owned 64.99% of the outstanding shares of East Coast.

20.  For many years, the Board of Directors of East Coast and Veritas relied upon the advice and counsel of certain attorneys currently or formerly members of Berlack Israels, or any of its predecessors, including, principally, defendant Neuhauser. Veritas and East Coast have paid hundreds of thousands of dollars to Berlack Israels to, among other things, ensure that East Coast comported with applicable federal and state laws and regulations.

21.  As set forth more fully in the Malpractice Complaint, in or about early 1998, East Coast requested that Defendant Neuhauser, then practicing at Berlack Israels, prepare a registration statement ("Registration Statement") under the Securities Act covering the proposed public offering and sale of securities of East Coast. The Registration Statement was to be the first step in taking East Coast public, as a way of raising new capital and expanding its lending capabilities.

22.  On or about August 7, 1998, East Coast filed the Registration Statement under the Securities Act covering a proposed sale of 1,437,500 units, each consisting of one share of East Coast common stock and a warrant to purchase an additional share of such common stock, at a price of $5.50 per unit.

23.  Thereafter, East Coast, by and through its attorneys, filed numerous amendments to its Registration Statement with the SEC.

6

24.  In June 1999, while East Coast's registration statement was pending but not yet effective, Meyer (Mark) Appel ("Appel") contacted Zelmanovitch about the possibility of making a substantial investment in East Coast. Specifically, Appel informed Zelmanovitch that he and his company, Chaps Group Corporation ("Chaps", and jointly with Appel, referred to as "Appel/Chaps"), were in a position to invest a collective $2.5 million in East Coast.

25.  At the time of the conversation between Appel and Zelmanovitch, East Coast, at the recommendation of its attorneys, had delayed making its Registration Statement effective because market conditions (according to the attorneys) were not favorable for raising capital for the company.

26.  Zelmanovitch related his conversation with Appel to Defendant Neuhauser and asked Neuhauser to represent East Coast in connection with Appel's investment.

27.  Neuhauser certainly knew that East Coast's pending Registration Statement precluded East Coast from utilizing any of the safe harbors promulgated under the Securities Act of 1933.  Therefore any attempted sale of securities prior to the effective date of the Registration Statement or its withdrawal would be in violation of applicable law and subject to rescission.

28.  Upon information and belief, Neuhauser never informed East Coast of this fact, or of the consequences of such a security law violation.

29.  Moreover, for a variety of reasons, including SEC regulations and tax implications, Veritas was unable to sell some of its East Coast holdings directly to Appel.

30.  Accordingly, Neuhauser, together with his partners at Berlack Israels, devised a scheme whereby Veritas would surrender some of its East Coast stock to East Coast.  These

shares would be returned to treasury and then reissued to Appel and Chaps in a purported "private offering".

31. Neuhauser believed that structuring the transaction without changing East Coast's total outstanding shares would permit the transaction to fly under the SEC's radar -- the examiner would have no reason to review the section of any amended registration concerning private placements when East Coast's total outstanding shares between filings remained the same.

32. On July 28, 1999, in the transaction devised by Defendants (the "Mark Appel Transaction"), Appel personally purchased 415,073 shares of East Coast in exchange for the sum of $650,000 pursuant to a written stock purchase agreement among Appel, Veritas and East Coast (the "Mark Appel Stock Purchase Agreement"). The Mark Appel Stock Purchase Agreement was prepared by Berlack Israels and Neuhauser.

33. That same day, July 28, 1999, in a transaction devised by Defendants (the "Chaps Transaction", and referred to jointly with the Mark Appel Transaction, as the "Appel Transaction"), Chaps purchased 1,181,360 shares of East Coast in exchange for the sum of $1,850,000 pursuant to a written stock purchase agreement among Appel, Veritas and East Coast (the "Chaps Stock Purchase Agreement"). The Chaps Stock Purchase Agreement also was prepared by Berlack Israels and Neuhauser.

34. To accommodate these purchases by Appel, Veritas transferred 1,596,433 shares of East Coast to East Coast, for no consideration, so that they could then be immediately issued to Appel and Chaps.

## EXCESSIVE DILUTION OF VERITAS' INTEREST IN EAST COAST

35.     As a result of the Appel Transaction, by which approximately 28% of Veritas' East Coast shares were provided to Appel, Veritas' interest in East Coast was excessively diluted.

36.     Before the Appel Transaction, and the contemporaneous transfer of Veritas shares to East Coast, Veritas possessed 5,701,545 shares of East Coast, and subsequent to such transaction Veritas merely had 3,705,133 shares of East Coast.

37.     If Appel had been issued the 1,596,433 shares directly from East Coast, rather than from Veritas (leaving Veritas with all of its 5,301,566 shares), then after the Appel Transaction, Veritas would have owned 72.75% of East Coast rather than just 64.99% that it retained after the Appel Transaction.


## THE ILLEGALITY OF THE APPEL TRANSACTION AND THE REPURCHASE OF THE APPEL SHARES

38.     On or about June 12, 2003, Appel sued East Coast and Veritas for rescission of his purchase of the East Coast shares. Appel alleged that the sale of unregistered securities while a registration statement was pending was illegal under §12(a)(1) of the Securities Act.

39.     In response to several motions to dismiss, amended complaints were filed by Appel. Although meritorious, the final complaint was dismissed for failure to commence the action within the applicable statute of limitations. While Appel set forth various reasons urging that the statute of limitations be equitably tolled, the court dismissed the claims.

40.     After dismissal, Appel appealed the decision to the United State Court of Appeals. Appel's attorneys also commenced drafting a complaint alleging fraud and other causes

of action, which was to be filed in the State court. During settlement discussions, East Coast was made aware of the pending state action, and the causes of action that were to be asserted.

41.    In the meantime, Brown Rudnick admitted to East Coast that the transaction violated applicable securities laws.

42.    Thus rather than risk an unfavorable result from the United States Court of Appeals, in or about May 2003, East Coast reached a settlement agreement with Appel/Chaps, pursuant to which East Coast repurchased Appel/Chaps' shares (the "Appel Shares") for a substantial sum of money.


**THE FRAUDULENT MISREPRESENTATION BY BERLACK ISRAELS**

43.    As set forth at length in the Malpractice Complaint, at the time Berlack Israels and Neuhauser advised East Coast and Veritas how to structure the Appel Transaction, Neuhauser knew that the transaction was illegal as structured. However, the reasons why Neuhauser advocated the illegal transaction did not become known until later.

44.    Unbeknownst to the plaintiff, and upon information and belief, unknown to even to the Boards of Directors of East Coast and Veritas, except Zelmanovitch, defendant Neuhauser had a personal, indirect ownership interest in East Coast, through the ownership of shares of Veritas by his wife, Chani Shore.

45.    In total, at the time of the Appel Transaction and when Neuhauser was advising East Coast, Neuhauser owned, through his wife, 6,137 shares of Veritas stock, which shares were subject to increase to 128,877 shares pursuant to an anticipated 21 to 1 forward

10

split. Valued at $4.10 per share, these shares had a value in excess of $500,000.

46.  As a result of this financial interest, Neuhauser had a personal motive for seeing that the Appel investment was made (it was good for East Coast, and therefore East Coast's shareholders), and an even better reason for seeing that the registration statement not be withdrawn -- its going effective would allow Neuhauser to sell his (wife's) shares for a substantial sum.

47.  In addition to the financial interest, Neuhauser had a second ulterior motive for creating the structure for the Appel Transaction.

48.  Upon information and belief, Neuhauser and/or his wife had made a donation of Veritas stock to a charitable organization prior to the Appel Transaction. However, the value of the donation, and thus the value of the tax write off for Neuhauser and his wife, was unclear, since Veritas and East Coast were private companies.

49.  Appel's purchase of East Coast's shares put a recognizable, and large, valuation to the shares of East Coast, and therefore, to the shares of Veritas. Without the sale to Appel, there would have been no basis for the large valuation of the Veritas shares, and therefore, to the large tax write off Neuhauser wanted to claim.

50.  As a result of his personal interest, and since East Coast could not issue new shares of its own treasury stock without raising red flags at the SEC, Neuhauser advised Veritas that it would need to transfer its shares to East Coast in order for the Appel Transaction to legally transpire – a false representation since the transaction could still not be legally made.

51.  In reliance upon this fraudulent misrepresentation, Veritas agreed to transfer 1,596,433

East Coast shares to East Coast, even though this transaction diluted Veritas' interest in East Coast to a greater extent than if East Coast had issued new shares.

## THE CONVERSION BY EAST COAST

52.   Upon information and belief, despite the repurchase of the Appel Shares, the shares were not thereafter returned to Veritas, or retired. Rather, upon information and belief, they remain outstanding shares in the custody and control of East Coast and/or Zelmanovitch.

53.   Upon information and belief, Zelmanovitch, as the controlling shareholder and director of Veritas, is personally responsible for Veritas' failure to formally demand the return of the Appel shares to Veritas, and further refusing to sue East Coast for its malfeasance or nonfeasance in overseeing the Appel Transaction.


### AS AND FOR A FIRST CAUSE OF ACTION
### Against Brown Rudnick, Berlack Israels and Neuhauser
### For Fraud, Fraudulent Misrepresentation and Fraudulent Inducement

54.   Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

55.   Neuhauser represented to Veritas that in order to permit Appel to legally invest in East Coast while the Registration Statement was pending, the investment required Veritas to transfer some of its shares of East Coast back to East Coast.

56.   Such representation was false and misleading.

57.   Neuhauser knew of the falsity of the representation when made. Neuhauser eventually admitted to East Coast's executives and general counsel that he knew the transaction was

illegal, but that he had hoped that Appel would never notice. He further berated himself, to East Coast's general counsel, for not obtaining a waiver from Appel.

58.    Veritas relied on Neuhauser's representations in transferring some of its East Coast shares to East Coast, for sale to Appel. Veritas only gave up its own East Coast shares because it was advised that doing so was the only way to legalize the Appel Transaction and obtain a lucrative investment from a new investor.

59.    As a result of Veritas' transfer of shares to East Coast, Veritas' interest in East Coast was reduced an extra 7.76% (from 72.75% to 64.99%) and its holdings in East Coast plunged from 5,701,545 to 3,705,133 shares.

60.    By reason of the foregoing fraud, Veritas has suffered damages and is entitled to recover in an amount to be proven at trial, but not less than $500,000.

## AS AND FOR A SECOND CAUSE OF ACTION
### Against East Coast for Aiding and Abetting the Fraud, Fraudulent Misrepresentation and Fraudulent Inducement

61.    Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

62.    East Coast and its Board of Directors have a duty of care to the shareholders of East Coast, including Veritas. East Coast's duty of care requires that the Board of Directors exercise due care in making major decisions affecting the company. The duty of care also requires that the directors ensure that the professionals hired by the corporation not have conflicts of interest, and that their professional opinions are not clouded by personal

13

interest and greed. Finally, the duty of care requires that the professionals not be hired merely based upon the friendship the professional may have with an officer or member of the Board of Directors, and that the professionals' opinions are not blindly accepted based on this friendship.

63.     Upon information and belief, Neuhauser and Berlack Israels were not hired based on merit, but based simply on Neuhauser's then existing friendship with Zelmanovitch. Upon information and belief, one or more members of the Board of Directors had repeatedly objected to the employment of Neuhauser, claiming that she did not trust him, but such objections fell on the deaf ears of Zelmanovitch. The failure to retain the services of an honest attorney was a breach of East Coast's duty of care to its shareholders.

64.     The proposed structure of the Appel Transaction should have been reviewed and questioned by East Coast's Board of Directors. If East Coast could not offer its own shares, then how could it offer the shares transferred to it by Veritas? The failure to closely question the legality of the transaction was a breach of East Coast's duty of care to its shareholders.

65.     The fact that Neuhauser was a beneficial owner of a substantial amount of shares in East Coast, should have dictated that: (i) he not be used as the attorney for East Coast; or (ii) that a second opinion be obtained before accepting his legal advice regarding the unusual structure of the Appel Transaction.

66.     The failure to employ an attorney without a known conflict of interest and/or to obtain a second opinion was a breach of East Coast's duty of care to its shareholders.

14

67.     Any of these breaches alone, and certainly these breaches combined, amount to a gross breach of the directors' duty of loyalty to the shareholders of East Coast, and constituted either malfeasance or nonfeasance, that, in effect, aided and abetted Neuhauser's commission of fraud.

68.     By reason of the foregoing, Veritas has suffered damages and is entitled to recover in an amount to be proven at trial, but not less than $500,000.

### AS AND FOR A THIRD CAUSE OF ACTION
**Against Veritas and Zelmanovitch for Breach of Fiduciary Duty, Breach of Trust**

69.     Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

70.     Every board of directors and every director of a New York corporation has a duty of care and loyalty to its shareholders. One aspect of this duty is to skillfully, diligently, carefully and honestly administer the affairs of the corporation. Directors must also act solely in the interests of the corporation and all it shareholders, and not in their own personal interests. Directors must also safeguard and protect the assets of the corporation.

71.     Pursuant to the duty of loyalty, a director must make decisions for the benefit of a corporation, even if it is to that director's personal detriment. Thus, a board of directors, and each individual director, must commence and prosecute any legal action, in good faith, even if in so doing, the individual director may suffer harm.

72.     Zelmanovitch, as director of Veritas, failed to perform the duties imposed upon him as officer and director of Veritas. Zelmanovitch failed to fulfill the duties placed upon him

15

by law, as he did not skillfully, diligently, carefully or honestly administer the affairs of the Veritas, and did not honestly act with respect to Veritas' affairs.

73.   To the contrary, Zelmanovitch wasted Veritas' assets by allowing Veritas to enter an ill conceived and illegal transaction, without proper investigation, and thereafter failed to take the necessary action to remedy the situation and recover Veritas' losses.

74.   By all rights, before Veritas agreed to transfer its shares to East Coast to aid the Appel Transaction, Zelmanovitch should have investigated the proposed transaction and advised the rest of the board of directors, as well as the shareholders, of the negative consequence of such transaction, i.e. of the resultant excess diminution of the value of its interest of East Coast.

75.   However, Zelmanovitch, and Veritas never properly examined the consequences of the Appel Transaction, since it was devised by his good friend, Neuhauser.

76.   In failing to investigate the transaction, and then advising the rest of the Veritas board and the shareholders that the Appel Transaction was in the best interests of Veritas, Zelmanovitch breached his duty of care to the shareholders of Veritas.

77.   By all rights, Veritas should have commenced an action against East Coast, and Zelmanovitch as well, for East Coast's malfeasance or nonfeasance in monitoring the actions of Berlack Israels and Neuhauser, or worse, for possible knowing complicity in the illegal Appel Transaction.

78.   However, because Zelmanovitch is the largest shareholder or beneficial shareholder of both East Coast and Veritas, Zelmanovitch declined to sue East Coast.

79.   In putting his own interests before the interests of the other shareholder of Veritas,

.Zelmanovitch has breached his duty of loyalty to the shareholders of Veritas.

80.  As a result of Veritas' failure to pursue a claim against East Coast, and against Zelmanovitch himself, for the diminution of Veritas' interest in East Coast, Zelmanovitch has prejudiced the rights or all Veritas' shareholders, in violation of his duty of loyalty to such shareholders.

81.   As a result of Veritas' failure to pursue a claim against East Coast, and possibly Zelmanovitch himself, for the diminution of Veritas' interest in East Coast, the plaintiff has been forced to commence this action at his own expense.

82.  By reason of the foregoing, Veritas has suffered damages, including the value of the diminution Veritas' East Coast interest, and the costs and expenses of this action, and is entitled to recover in an amount to be proven at trial, but not less than $600,000.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Against East Coast for Conversion

83.  Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

84.  In order to resolve the actual and threatened litigations between Appel/Chaps, East Coast and Veritas, those parties settled all claims for a substantial sum. As part of the agreement, East Coast repurchased Appel and Chaps' shares of East Coast.

85.  Upon return of the shares to East Coast, the shares should have further been returned to their source -- Veritas.

86.  However, the Appel shares were not returned to Veritas.

17

87.   Upon information and belief, Appel's former shares are in the possession or control of Zelmanovitch and the board of East Coast.

88.   The failure of East Coast to timely return the Appel Shares to Veritas upon their return from Appel/Chaps, constitutes conversion of those shares.

89.   By reason of the foregoing, Veritas has suffered damages and is entitled to recover in an amount to be proven at trial, but not less than $2,000,000.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Against Zelmanovitch for Conversion**

90.   Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

91.   Upon information and belief, Zelmanovitch has converted to his own use the shares that were returned to East Coast by Appel.

92.   Such shares are properly the property of Veritas and should have been returned to Veritas.

93.   By reason of the foregoing, Veritas has suffered damages and is entitled to recover in an amount to be proven at trial, but not less than $2,000,000.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Against Veritas and Zelmanovitch for Breach of Fiduciary Duty**

94.   Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

95.     As set forth previously, pursuant to the duty of loyalty, a director must commence and prosecute legal actions, in good faith, on behalf of the corporation and for the benefits of the corporation's shareholders.

96.     In this matter, Zelmanovitch, who controls the Veritas board of directors, has an inherent conflict of interest, since he is also the largest beneficial shareholder of East Coast.  Thus, he refuses to allow Veritas to take appropriate action against East Coast.

97.     The plaintiff demanded that Veritas take action against East Coast for the recovery of the Appel shares, but Veritas has failed and refused to take such action.

98.     Zelmanovitch's and Veritas' failure to commence an action for the recovery of the Appel Shares, despite the plaintiff's demand to bring such an action, is a breach of the duty owed to the shareholders of Veritas.

99.     By reason of the foregoing, Veritas has suffered damages and is entitled to recover in an amount to be proven at trial, but not less than $2,000,000.


### AS AND FOR A SEVENTH CAUSE OF ACTION
**Against Veritas and Zelmanovitch pursuant to**
**New York's Business Corporation Law § 720(a)(1)(A)**

100.    Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

101.    Zelmanovitch's failure to proceed with an action against Berlack Israels, Neuhauser, and East Coast for fraud and aiding and abetting fraud, and against East Coast and Zelmanovitch for conversion of the Appel Shares, is a violation of New York's Business

Corporation Law § 720(a)(1)(A).

102.    By reason of the foregoing, Veritas has suffered damages and is entitled to recover in an amount to be proven at trial, but not less than $2,600,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants as follows:

(a)    Awarding Plaintiff compensatory, consequential and punitive damages, against Berlack Israels, Neuhauser and East Coast, for the diminution in value of Veritas' interest in East Coast as a result of the structure of the Appel Transaction, in an amount to be determined at trial.

(b)    Awarding Plaintiff compensatory, consequential and punitive damages against Veritas and Zelmanovitch, for failing to prosecute an action against East Coast, for the diminution in value of Veritas' interest in East Coast as a result of the structure of the Appel Transaction, in an amount to be determined at trial.

(c)    Awarding Plaintiff compensatory, consequential and punitive damages against East Coast and Zelmanovitch, for the failure to return the Appel Shares to Veritas upon East Coast's repurchase of the shares from Appel, in an amount to be determined at trial.

(d)    Awarding Plaintiff compensatory, consequential and punitive damages against Veritas and Zelmanovitch, for failing to prosecute an action against East Coast, for the return of the Appel Shares to Veritas,

(e)    Awarding Plaintiff pre- and post-judgment interest in the maximum amount allowed at

law;

(f)     Awarding Plaintiff the costs, disbursements and attorneys fees in connection with this

action; and

(c)     Awarding Plaintiff such other, further and different relief as the Court deems just and

proper.

Dated: New York, New York
       March 9, 2005


                         RAICE PAYKIN GREENBLATT
                         LESSER & KRIEG LLP

                         By: _____/s/ David J. Wolkenstein_____.
                                David J. Wolkenstein (DW 0398)
                                Joseph N. Paykin (JP 3410)
                         185 Madison Avenue, 10th Floor
                         New York, New York 10016
                         (212) 725-4423
                         *Attorneys for Plaintiff*

21